```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF VIRGINIA
                 BIG STONE GAP DIVISION
```

| | | |
|---|---|---|
| **WENDY RAMSEY,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:10CV00073 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Roger W. Rutherford, Wolfe, Williams, Rutherford & Reynolds, Norton, Virginia, for Plaintiff; Eric Kressman, Regional Chief Counsel, Region III, Robert S. Drum, Assistant Regional Counsel, and Robert W. Kosman, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this Social Security disability case, I affirm the final decision of the Commissioner.

I

Plaintiff Wendy Ramsey filed this action challenging the final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for social security income ("SSI") benefits pursuant to Title XVI of the Social Security

Act ("Act"), 42 U.S.C.A. §§ 1381-1383D (West 2003 & Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Ramsey protectively filed for benefits in July 2007, alleging disability since April 2, 2001, due to depression, generalized back problems, and degenerative disc disease. Her claim was initially denied and upon reconsideration. Ramsey received a hearing before an administrative law judge ("ALJ"), during which Ramsey, represented by counsel, and a vocational expert ("VE") testified. The ALJ denied Ramsey's claim, and the Social Security Administration's Appeals Council denied her Request for Reconsideration. Ramsey then filed her Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is ripe for decision.

II

Ramsey was thirty-seven years old when she filed for benefits, a "younger individual" under the regulations. *See* 20 C.F.R. § 404.1563(c) (2010). Ramsey, who has an eighth-grade education, has previously worked in a sewing factory but has no past relevant work. Ramsey alleges disability primarily due to depression and back pain.

Ramsey's primary care has been provided by Todd A. Cassell, M.D. On June 14, 2005, Ramsey presented to Cassell for back pain. After performing an MRI, he noted chronic central disc protrusion at L4-5 but found "minimal if any left L5 nerve root compression." (R. at 176.) He also found minor disc degeneration with minimal disc bulge at L5-S1 "with no stenosis or nerve root compression." (*Id.*) On December 13, 2006, in evaluating an MRI, Cassell reported a cystic mass in the right knee, for which Ramsey underwent an arthroscopic procedure.

On May 18, 2007, Cassell entered a diagnosis of degenerative disc disease and depression but noted "even emotions in the office." (R. at 200.) Because she alleged little improvement in either condition, he recommended the continuation of hydrocodone and an increased dosage of Topomax. On June 19, 2007, Cassell noted Ramsey, who had recently ended a long-term romantic relationship, displayed a flat affect. For the treatment of her depression, he again increased her Topomax dosage and added Seroquel; for her degenerative disc disease, he prescribed Lortab. On August 9, 2007, Cassell found that Ramsey's "mood swings [have] improved some, [and] she feels some better, but still fairly depressed." (R. at 203.) Ramsey again reported no change in her back pain. The only treatment change was another increase in the dosage of Topomax. On September 21, 2007, Cassell reported that Ramsey's mood was "a lot lighter this than last" but noted no

change in her back tenderness. (R. at 234.) However, he made no changes to the treatment program.

On September 27, 2007, Ramsey presented to B. Wayne Lanthorn, M.D., for a consultative examination. In evaluating Ramsey's back pain, Lanthorn noted that she was able to "ambulate without apparent difficulty or problems of gait." (R. at 208.) Furthermore, Lanthorn found that Ramsey did "have some depressive symptomatology but these do not rise to the level of a full-fledged diagnosis." (R. at 209.) He assessed her global assessment of functioning ("GAF") score at 61.[1] Finally, he found that she possessed borderline intellectual functioning but noted her capability to manage her own funds and her extensive daily activities as unsupportive of severe impairment.

On October 1, 2007, state agency psychologist Julie Jennings, Ph.D., completed a mental Residual Functional Capacity ("RFC") assessment. She found medically determinable impairments of pain disorder associated with both psychological factors and general medical conditions and depressive disorder. However, she determined that they were not of listing-level severity. Under "Paragraph B" criteria, she noted only moderate limitations on the restriction of

---

[1] The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. See Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

-4-

Case 2:10-cv-00073-JPJ-PMS   Document 17   Filed 08/22/11   Page 4 of 12   Pageid#: 479

activities of daily living; on social functioning; and on maintaining concentration, persistence and pace. She also found no decompensation. On February 20, 2008, state agency psychologist Howard S. Leizer, Ph.D., confirmed these findings in a second mental RFC assessment.

On October 12, 2007, state agency physician Robert McGuffin, M.D., completed a physical RFC assessment. He found a medically determinable impairment of disorder of the back. However, he noted that Ramsey could lift or carry twenty pounds occasionally and ten pounds frequently; moreover, she could stand, walk or sit for about six hours in an eight-hour workday. On February, 19, 2008, state agency physician Donald Williams, M.D., confirmed these findings in a second physical RFC assessment.

On December 7, 2007, Cassell reported that Ramsey was "bothered with her mood" and increased her Celexa dosage; there was no discussion of and no change in treatment for her back pain. On April 2, 2008, Ramsey reported that her mood was about the same, and Cassell noted an "oriented comfortable flat affect." (R. at 331.) He prescribed lithium and "encouraged exercise for this treatment as well." (*Id.*) While Cassell reported very little external tenderness in Ramsey's back, he referred her to a physical therapist for evaluation. Upon evaluation, Bellamy reported that her lower back pain was alleviated when sitting and when still but made worse by bending and walking long distances.

On May 1, 2008, Ramsey complained that both her depression and her back pain had worsened. Cassell noted that her back was sensitive, with some spasms and a decreased range of motion. However, he did not alter the pre-existing treatment plan. On July 24, 2008, Ramsey complained of left arm numbness and worsening back pain. Regarding her depression, Ramsey stated that "she is all right for now." (R. at 336.) Cassell found her "affect depressed" and "some tenderness and spasm in the lower lumbar muscles." (R. at 335.) He prescribed a higher dosage of Lortab and provided a splint for her left hand. On December 4, 2008, Ramsey presented to Cassell complaining of intensified pain her back and legs but reported her mood was "ok, aggravated mainly by the pain." (R. at 339.) Cassell noted generalized minor tenderness with "some stiffness [but] no localized weakness." (*Id*.) He diagnosed unspecified inflammatory polyarthropy and prescribed Daypro. However, with regard to her back pain and depression, he did not alter the treatment program.

In addition to Cassell, beginning in 2006, Ramsey had been receiving treatment for major depression, social anxiety disorder, and post-traumatic stress disorder from Licensed Counselor Karen Odle and Psychiatric Clinical Nurse Specialist Juliana Frosch. From May 15, 2006, until February 2, 2009, the practitioners routinely reported that Ramsey had intact thought process and orientation, good judgment, and no signs of paranoia or delusion.

After reviewing the record, the ALJ found that Ramsey suffered the severe impairments of degenerative disc disease, depression, and borderline intellectual functioning. However, the ALJ further found that the impairments are not of listing-level severity.

The VE testified that someone with Ramsey's RFC, age, and work history could perform both light and sedentary work. In the light work classification, Ramsey could work as a laundry worker, a product packager, or a machine operator. In the sedentary work classification, Ramsey could perform jobs such as product inspector, machine tender, and product grader. According to the VE, there are approximately 14,400 jobs in the region and 515,000 jobs in the national economy. Relying on this testimony, the ALJ concluded that Ramsey was able to perform work that existed in significant numbers in the national economy and was therefore not disabled under the Act.

Ramsey now challenges the ALJ's unfavorable ruling, arguing that the decision is not supported by substantial evidence. For the reasons detailed below, I disagree.

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for

disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy…." 42 U.S.C.A. § 423(d)(2)(A) (West 2010).

In assessing SSI claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2010). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry rely upon an assessment of the claimant's RFC, which is then compared to the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. (*Id*. at 869.)

This court's review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard was applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*,

829 F.2d 514,517 (4th Cir. 1987). In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*. 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. It is not the role of this court to substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

On appeal, Ramsey argues that substantial evidence does not support the ALJ's ruling that she is not disabled under the Act. Ramsey asserts that the ALJ improperly rejected the opinions of her treating sources. Ramsey presented evidence of degenerative disc disease, depression, and borderline intellectual functioning. While her impairments have obviously impacted her, there is substantial evidence to support the ALJ's finding that these impairments did not render her disabled as defined under the Act.

A treating physician's medical opinion will be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2010). However, the ALJ has "the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

In the present case, Cassell's findings in the "Medical Assessment of Ability to Do Work-Related Activities" form and in the Mental RFC Questionnaire do contradict the findings of the state agency physicians; however, the ALJ reasonably concluded that these findings are inconsistent with other substantial evidence. Cassell diagnosed Ramsey with degenerative disc disease but noted minimal, if any, nerve compression. Furthermore, the conservative treatment provided by Cassell is indicative of a non-disabling impairment. He also never considered Ramsey as a candidate for surgery, never referred her to a neurosurgeon, and did not order an additional MRI after 2005. For these reasons, I cannot find error in the ALJ's assessment of Cassell's medical opinion.

Additionally, a treating source is defined as "your own physician, psychologist, or other *acceptable medical source* who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an

-10-

Case 2:10-cv-00073-JPJ-PMS   Document 17   Filed 08/22/11   Page 10 of 12   Pageid#: 485

ongoing treatment relationship with you." 20 C.F.R. § 416.902 (2010) (emphasis added); *see also* 20 C.F.R. § 416.913(a) (2010) (listing those sources that qualify as acceptable medical sources). Other sources are not controlling but subject to evaluation by the ALJ to determine the appropriate weight of the opinion. *See generally* 20 C.F.R. § 416.927(d) (2010) (stating the factors to consider when determining the weight to give a medical opinion).

In the present case, Odle and Frosch do not qualify as acceptable medical sources, and thus their opinions are not entitled to controlling weight. In assessing the opinions, the ALJ noted that Ramsey had never been hospitalized due to a mental impairment and also cited her substantial daily activity and parental responsibilities. Additionally, the practitioners consistently noted that she has intact orientation and thought process, good judgment, and no evidence of paranoia or delusions. For these reasons, I cannot find error in the ALJ's assessment of their professional opinions.

## IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: August 22, 2011

/s/ James P. Jones
United States District Judge